1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7      FRANCIS MCARTHUR,                          Case No.  21-cv-09412-KAW

8                        Plaintiff,

9             v.                                  **ORDER FOLLOWING PRETRIAL
                                                 CONFERENCE**
10     ALAMEDA COUNTY PUBLIC                       Re: Dkt. Nos. 114, 119
       DEFENDER'S OFFICE, et al.,
11
                       Defendants.
12

13                           **I.     MOTIONS IN LIMINE**

14          Plaintiff Francis McArthur has filed nine motions in limine, while Defendants Office of the

15    Alameda County Public Defender, Diane Bellas, Brendon Woods, Robert Shipway, Youseef Elias,

16    Alameda County Board of Supervisors, and County of Alameda have filed seven motions in

17    limine.  (Pl.'s MIL,[1] Dkt. No. 119; Def.'s MIL, Dkt. No. 114.)

18          **A.     Plaintiff's MIL No. 1: Exclusion of Michael J. Aye's Expert Testimony**

19          Plaintiff seeks to exclude the testimony of Defendants' expert, Michael J. Aye, on the

20    grounds that: (1) Mr. Aye is seeking to opine on a legal conclusion, and (2) Mr. Aye's opinion is

21    not reliable. (Pl.'s MIL at 4.)  Mr. Aye has litigated Sexually Violent Predator Act ("SVPA")

22    cases since March 1996, including conducting 33 Sexually Violent Predator ("SVP") jury trials.

23    (Goidosik Decl., Exh. 1 ("Aye Report") at 1, Dkt. No. 121-2; Exh. 2 ("Aye Rebuttal Report") at 3,

24    Dkt. No. 121-3.)  Mr. Aye is a founding member of the Sexual Offender Commitment Defense

25    Association ("SOCDA"), the author of Chapter 18, Assessing Evidence Under the Sexually

26

27    _____
      [1] The Court notes that once again, Plaintiff's filing was made after the deadline.  As Defendants do
28    not object and there is no apparent prejudice to either Defendants or the Court, the Court will
      permit the late filing.  Plaintiff's counsel, however, is forewarned that further untimely filings may
      be stricken.

United States District Court
Northern District of California

Violent Predator Act, CEB, Scientific Evidence in California Criminal Cases (2012), and has presented seminars to various County Public Defender's Offices on SVP topics. (Aye Report at 1.) In coming to his opinion, Mr. Aye reviewed all attorney's notes, correspondence, and SVP evaluations in Plaintiff's file; Plaintiff's deposition testimony; Plaintiff's SVP defense files, including police and court records; Coalinga Hospital treatment records; and motions filed in Plaintiff's case. (Defs.' Opp'n at 3, Dkt. No. 121; *see also* Aye Report, Appendix B.)

In assessing the reliability of attorney expert testimony, courts have considered the following:

> (1) whether the expert identified the materials relied upon and personally examined the file underlying the case; (2) whether the expert sufficiently explained why he or she reached an opinion; (3) whether the expert cited other sources relied upon by attorneys such as applicable statutes, treatises, or publications by professional organizations; or (4) whether the expert demonstrated that his opinion is accepted by his peers.

*McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1291 (D. Haw. 2007) (internal quotations omitted). This is not an exhaustive list, and "the expert testimony need not satisfy all of these criteria to be deemed reliable."

With respect to whether Mr. Aye is seeking to opine on the ultimate legal conclusion, the Court disagrees. Plaintiff asserts that Mr. Aye is being asked to testify as to whether the public defenders' defense strategy of Plaintiff was reasonable. (Pl.'s MIL at 4.) Plaintiff provides no explanation for how this is the ultimate legal conclusion. Rather, the ultimate question that the jury must consider is whether Plaintiff suffered a due process violation based on the actions of his public defenders. Whether the public defenders' strategy was reasonable goes to this question, particularly the *Barker* factors of whether the delay should be attributed to Plaintiff and whether he sufficiently asserted his right to a trial. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (articulating four-factor balancing test to determine if there was a due process violation). It is not, however, an opinion as to whether Plaintiff did or did not actually suffer a constitutional violation, The jury would still be required to actually consider all four *Barker* factors and conduct the requisite balancing test.

In the alternative, Plaintiff points to a number of Mr. Aye's opinions that he asserts are

2

United States District Court
Northern District of California

1  unreliable.  (Pl.'s MIL at 4.)  The Court notes that Plaintiff did not specify where the vast majority

2  of these opinions are, and it is not the Court's responsibility to comb through Mr. Aye's expert

3  report, rebuttal report, and deposition to try to determine which specific opinions Plaintiff

4  challenges.  (*See id.* at 4-6.)  Instead, the Court has had to rely on Defendants' identification of

5  where these challenged opinions are.

6      Having reviewed the challenged opinions, the Court finds that Plaintiff's complaints

7  generally do not demonstrate that Mr. Aye's opinions are unreliable.  First, Plaintiff challenges

8  Mr. Aye's opinions about public defender law practice, on the ground that Mr. Aye never worked

9  in a public defender's office.  (Pl.'s MIL at 4.)  The opinions Plaintiff points to, however, are not

10  specific to public defenders, but about SVP defense practice generally.  For example, Plaintiff

11  complains that Mr. Aye opined that public defenders are "mavericks," when his deposition

12  testimony was discussing defense attorneys in general.  (*Id.*; Goidosik Decl., Exh. 4 ("Aye

13  Depo.").)  Plaintiff also asserts that Mr. Aye did not consider Attorney David Feld's memo to his

14  supervisors, but Mr. Aye clearly refers to Attorney Feld's memo in his rebuttal report.  (*See* Aye

15  Rebuttal Report ¶¶ 76-80, 82.)

16      Second, Plaintiff challenges Mr. Aye's presentation of the Alameda County Public

17  Defender's library and training as sufficient because Mr. Aye never asked if public defenders used

18  the library, failed to notice that some articles were not in the library, and acknowledged that some

19  major cases were not in the library.  (Pl.'s MIL at 5.)  Whether public defenders actually used the

20  library is a distinct issue from whether it was adequate.  Further, it is not clear to the Court that the

21  absence of certain documents out of 850 documents renders Mr. Aye's opinion so unreliable as to

22  be inadmissible; at most, this appears to go to weight.

23      Third, Plaintiff asserts Mr. Aye "ignores salient facts," namely that he was never asked by

24  the Alameda County Public Defender's Office to give a training.  (Pl.'s MIL at 5.)  Plaintiff,

25  however, fails to explain why this is a significant fact that renders his opinion inadmissible.

26      Fourth, Plaintiff contends that Mr. Aye's opinion that Plaintiff's case would have been

27  difficult to win is unsupported by his own experience because Mr. Aye won other SVP cases that

28  involved crimes with worse facts, as well as SVPs with more infractions while in prison.  (Pl.'s

MIL at 5-6.)  Yet simply because these crimes may have been worse and/or an individual may have had more infractions does not necessarily make these cases comparable to Plaintiff's.  As the California Supreme Court explained in *Camacho v. Superior Court*, in determining if an individual may meet the definition of an SVP, a state evaluator must consider not only the qualifying sexually violent offense, but whether the person has a diagnosed mental disorder that makes them a danger to others, whether the mental disorder makes it likely that a person will engage in future acts of sexually violent criminal behavior, and whether those acts would be predatory.  15 Cal. 5th 354, 370 (2023).  Moreover, SVP trials "are not aimed primarily at establishing an individual's liability for past events, but instead at establishing the individual's present need for mental health treatment." *Id.* at 377.  Thus, even if the individuals Mr. Aye represented had worse crimes, they may have had different mental health status that distinguished them from Plaintiff's case.  Plaintiff's focus on one aspect out of the many that must be considered at a SVP trial does not demonstrate that Mr. Aye's opinion is unreliable.

Fifth, Plaintiff asserts that Mr. Aye speculates about certain evidence, particularly with respect to Dr. Beryl Davis.  (Pl.'s MIL at 6.)  Per Attorney Feld's declaration, Dr. Davis agreed to review Plaintiff's case, and was retained in September 2009.  (Feld Decl. ¶ 26, Dkt. No. 80-3.)  It appears Dr. Davis never issued an opinion in Plaintiff's case, and Mr. Aye opines that she seemed unwilling to find that Plaintiff did not meet the SVP criteria because she never generated a report. (Aye Report at 3.)  Plaintiff argues that Dr. Davis may not have generated a reported because she was diagnosed with cancer before being retained by Attorney Feld, and died sixteen months after she last spoke with Attorney Feld.  (Aye Report at 6.)  This, however, is a disagreement regarding weight, not a demonstration that Mr. Aye's opinion is so unreliable that it must be excluded. Indeed, Mr. Aye acknowledged Dr. Davis's cancer diagnosis in his deposition, but also draws on his experience with both Dr. Davis and as a SVP defense practitioner to explain why he believes the lack of a report demonstrates a negative opinion.  (Aye Depo. at 237:6-239:3; *see also* Aye Rebuttal Report ¶¶ 57-58 (explaining that he never wanted expert witnesses to generate negative evaluations because it could result in adverse evidence for a client).)  Plaintiff also complains that Mr. Aye did not realize that Plaintiff's case was dropped from the calendar while justifying it as an

after-the-fact strategy, but again, Mr. Aye did not opine in such a way.  (Pl.'s MIL at 6.)  Rather, it appears Mr. Aye opined that while it was not a strategy in and of itself, it was ultimately beneficial given that it was a period where the trial court and district attorney would not have pushed for a trial that Plaintiff had acknowledged he would lose.  (Aye Depo. at 245:13-246:20.)  While Plaintiff may disagree with this opinion, disagreement does not demonstrate unreliability.

Accordingly, Plaintiff's first motion in limine is DENIED.

**B.   Plaintiff's MIL No. 2: Exclusion of Generalizations about SVP Clients**

Plaintiff seeks to exclude "generalizations about SVP clients," including but not limited to: (1) other Coalinga patients having brought unfounded *Vasquez* claims, (2) other SVP clients not wanting to come to court, and (3) other SVPs making a conscious decision to delay their trial. (Pl.'s MIL at 7.)  As a general matter, Defendants do not object to the exclusion of these three categories of evidence, but correctly point out that Plaintiff fails to specifically identify what other evidence would fall under this exclusion.  (Defs.' Opp'n at 8.)  This effectively requires the Court to speculate as to what is included in this motion in limine's scope, which the Court declines to do. *See Um Corp. v. Tsuburaya Prods. Co.*, No. CV 15-03764-AB (AJWx), 2017 U.S. Dist. LEXIS 218369, at *3 (C.D. Cal. Nov. 3, 2017) ("[U]nless the motion identifies specific evidence it seeks to exclude and the specific reasons to exclude it, the court would be forced to 'rule in a vacuum' on the admissibility of evidence."); *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2021 U.S. Dist. LEXIS 66297, at *34-35 (N.D. Cal. Mar. 31, 2021) ("Plaintiffs are correct that, with some exceptions, Defendants fail to identify precisely which exhibits should be excluded.  Therefore, the Court denies the motion as to any exhibits other than those identified in it.").  Thus, it is unclear what would be excluded.  Under such circumstances, Defendants ask that the Court defer ruling on this matter, and instead address it as (and if) it arises.  Plaintiff, in turn, did not appear to object to deferring a ruling, and clarified that this motion in limine would pertain to generalizations that are not specific to Plaintiff, such as testimony that other SVP detainees generally did not want to go to court.

Accordingly, the Court DEFERS ruling on Plaintiff's second motion in limine.

United States District Court
Northern District of California

United States District Court
Northern District of California

**C.      Plaintiff's MIL No. 3: Exclusion of Plaintiff's Prior Crimes and Bad Acts**

Plaintiff seeks to exclude evidence of Plaintiff's prior bad acts, specifically: (1) Plaintiff "rubbing up against a staff member" at Coalinga, (2) Plaintiff possibly possessing bondage porn, (3) Plaintiff saying he killed his dog with a bat, (4) Plaintiff being accused of other rapes, and (5) Plaintiff being committed to Camarillo State Hospital when he was 13 because he was accused of rape.  (Pl.'s MIL at 8.)  Plaintiff asserts that such evidence is more prejudicial than probative.

The Court disagrees.  In this case, Plaintiff alleges that the failure of his public defenders to bring his case to trial violated his due process rights to a timely trial.  (*See* Pl.'s Trial Brief at 3, Dkt. No. 115.)  Defendants, in turn, argue that Plaintiff's public defenders (and Plaintiff himself) agreed to delay his trial because his chance of success at trial was extremely low, and would have resulted in his indefinite commitment.  (Defs.' Opp'n at 8.)  In justifying the reasonableness of this strategy, Defendants point out that Plaintiff's public defenders would have known such facts and based their judgment of how to proceed on such information.  (*Id.* at 9.)  Further, Defendants point to the determinations of the state evaluators, who consider an individual's entire criminal, social, and psychological history in deciding whether an individual is a SVP.  (*Id.*)  Here, the state evaluators cited the above bad acts in concluding that Plaintiff met SVP criteria.  (*Id.* at 11.)

Plaintiff appears to suggest that Plaintiff's public defenders would have been obliged to try to exclude such evidence as prejudicial, but cited **no** legal authority in either the motion in limine or at the hearing to suggest that such a strategy would have been successful.  Instead, Plaintiff's only legal authority is the California Supreme Court's 2016 decision in *People v. Sanchez*, 63 Cal. 4th 665.  (Pl.'s MIL at 7-8.)  There, the California Supreme Court acknowledged that some courts had previously permitted experts to testify about out-of-court statements, reasoning that such statements were not hearsay because they "go only to the basis of the expert's opinion and should not be considered for their truth."  63 Cal. 4th at 680-81 (internal quotation omitted).  The California Supreme Court recognized, however, that when an expert was testifying about facts considered by the expert, and no other evidence of the case-specific facts were being presented, "there is no denying that such facts are being considered by the expert, and offered to the jury, as true."  *Id.* at 684.  Thus, "[i]f an expert testifies to case-specific out-of-court statements to explain

1     the bases for his opinion, those statements are necessarily considered by the jury for their truth,

2     thus rendering them hearsay." *Id.*

3         Plaintiff's detention in this case lasted from 2007 to 2020, and the state evaluations at issue

4     took place in 2007, 2011, and 2012. (Joint Pretrial Statement at ECF 4, Dkt. No. 106; Defs.'

5     Opp'n at 9.) In other words, the vast majority of Plaintiff's detention took place before *Sanchez*.

6     Thus, the Court has no basis beyond Plaintiff's speculation that the above evidence would

7     absolutely have been excluded during the SVP trial, such that Plaintiff's public defenders should

8     not have considered it when deciding on their strategy. Indeed, there are cases in which trial

9     courts did permit experts to testify to non-predicate offenses in SVP trials. For example, in *People*

10    *v. Dean*, the Court of Appeal acknowledged the pre-*Sanchez* rule that "out-of-court statements

11    offered to support an expert's opinion are not hearsay because they are not offered for the truth of

12    the matter asserted, but rather for the purpose of assessing the value of the expert's opinion." 174

13    Cal. App. 4th 186, 197 (2009). The Court of Appeal then went on to consider whether experts

14    could testify about misconduct and institutional records that were not the offenses that qualified

15    the defendant as a SVP. *Id.* at 198-99. The Court of Appeal found the trial court did *not* abuse its

16    discretion in allowing one expert to testify that the defendant did not participate in treatment, was

17    aggressive and verbally hostile to people at the hospital, called a female staff member a dog who

18    peed all over the place, had a hostile relationship towards women, had begun committing crimes at

19    a young age, had continued engaging in illegal activity during his adult years, and had been

20    accused of other rapes in jail. *Id.* at 197-98, 200.

21         In short, the Court cannot conclude that the above bad acts would have no probative value

22    because they would have been excluded during the SVP trial, particularly before *Sanchez*. Rather,

23    it appears there was a significant risk that such evidence would have come in. Further, even after

24    *Sanchez*, the above bad behavior may have been admissible under an applicable hearsay

25    exception. *See Sanchez*, 63 Cal. 4th 665, 684 (explaining that out-of-court statements could be

26    properly admitted through an applicable hearsay exception or admitted through an appropriate

27    witness with the expert assuming its truth in a properly worded hypothetical question); *People v.*

28    *Yates*, 25 Cal. App. 5th 474, 485-86 (2018) (finding that criminal records could have been

1    admitted under a hearsay exception and that hospital records could have been admitted as business

2    records, but that such documents had not been introduced and thus the expert could not testify

3    about such case-specific facts).[2]

4         Moreover, even if the bad acts may have been excluded during an SVP trial, this still does

5    not mean they have no probative value.  As acknowledged in *Sanchez*, "[a]n expert may still *rely*

6    *on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so."  63 Cal.

7    4th at 685 (original emphasis).  Thus, even if the specific bad acts were not presented to a jury, a

8    public defender would still need to consider the effect of such facts on Plaintiff's evaluators.

9         The Court acknowledges that the above bad acts are prejudicial, as a jury may consider

10   them for improper purposes other than whether Plaintiff suffered a due process violation.  That

11   said, the Court finds that they are highly probative.  The totality of Plaintiff's behavior goes

12   directly to whether Plaintiff's public defenders believed their trial strategy was reasonable,

13   including its potential effect on an evaluator and whether it may come in at trial.  Likewise, such

14   evidence goes to Defendants' argument that Plaintiff agreed to his public defenders' advice.

15   Taken together, the Court finds that the probative value outweighs the risk of prejudice.

16   Accordingly, Plaintiff's third motion in limine is DENIED.  That said, the court is willing to

17   entertain a proposed limiting jury instruction regarding how this information should be used.

18        **D.    Plaintiff's MIL No. 4: Exclusion of Testimony re Common Practice of Delay**

19        Plaintiff seeks to exclude testimony that the strategies used in Plaintiff's case were

20   common and/or used "throughout the state."  (Pl.'s MIL at 5.)  First, Plaintiff argues there is no

21   foundation for this assertion.  (*Id.*)  Defendants, however, state that Mr. Aye is likely to testify that

22   a strategy of delay was common in California.  (Def.'s Opp'n at 13.)  Further, Defendants state

23   that Plaintiff's own public defenders can testify as to their basis for their recommended strategies,

24

25   [2] At the hearing, Plaintiff argued for the first time that Plaintiff's statements made during treatment would be privileged and not admissible.  As an initial matter, arguments made for the first time at oral argument are deemed waived.  *See Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019) (argument made for first time at oral argument was deemed waived); *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069 (9th Cir. 2010) ("Rosenfield's counsel hinted at that possibility for the first time at oral argument, so any such argument was waived.").  Moreover, Plaintiff again cited no legal authority in support of this proposition.

1    including their personal knowledge of what strategies were being applied in SVP cases.  (*Id.*)

2    Thus, the Court cannot necessarily find Defendants will be unable to lay a foundation.

3            Second, Plaintiff argues that whether delay was a common practice is not relevant.  (Pl.'s

4    MIL at 8.)  Defendants counter that this goes to what the prevailing professional norms were at the

5    time, and that the fact that public defenders throughout California used the same strategy would

6    make it more likely than not that this delay strategy was reasonable.  (Def.'s Opp'n at 13-14.)  The

7    Court agrees.

8            Finally, Plaintiff contends that this should be excluded because it goes to pattern and

9    practice, which is not at issue given that the Court has bifurcated *Monell* liability.  (Pl.'s MIL at 8-

10   9.)  In bifurcating *Monell*, however, the Court was separating out the issue of whether Defendants

11   ratified customs and practices that encouraged public defenders to unreasonably delay bringing

12   SVP cases to trial.  (Bifurcation Order at 3, Dkt. No. 46.)  This is a separate matter from whether

13   the strategy employed by Plaintiff's public defenders was a prevailing strategy throughout the

14   *state*.

15           Accordingly, Plaintiff's fourth motion in limine is DENIED.

16

17       **E.    Plaintiff's MIL No. 5: Exclusion of Evidence of Continuances after Appointment
                 of Conflict Counsel**

18           Plaintiff seeks to exclude evidence of continuances sought by Plaintiff's conflict counsel as

19   irrelevant and because it would make Plaintiff's counsel a witness.  (Pl.'s MIL at 9.)  Defendants

20   respond that such evidence is relevant because it rebuts Plaintiff's argument that delay as a

21   strategy is inadequate.  (Def.'s Opp'n at 14.)  As to the second point, Defendants correctly point

22   out that Plaintiff provides no legal authority.

23           The Court finds that evidence of continuances is relevant to the issue of whether the

24   strategy of delay was reasonable.  As to Plaintiff's point that this would make his counsel a

25   witness, Plaintiff cites no legal authority and provides no analysis in support of this motion in

26   limine, which is two sentences long.  The Court is not obliged to find legal authority or create

27   arguments for Plaintiff.

28           At the hearing, Plaintiff made new arguments about what counsel was doing during that

United States District Court
Northern District of California

time and whether it would require the jury to speculate.  Again, arguments made for the first time at oral argument are deemed waived.  *See Booth*, 914 F.3d at 1206; *Johnson*, 614 F.3d at 1069.  Further, this appears to be a fact question for the jury, including whether the delays were reasonable or not.  Accordingly, Plaintiff's fifth motion in limine is DENIED.

### F.    Plaintiff's MIL No. 6: Exclusion of Evidence Produced by Coalinga Not in Defendants' File

Plaintiff's sixth motion in limine, in its entirety, states: "Motion to exclude documents (and testimony about these documents) for which there is no sponsor to show the relevance, e.g., hospital records that were obtained only for the present litigation."  (Pl.'s MIL at 9.)  Again, Plaintiff provides no legal authority or analysis, nor is it clear to what evidence this motion in limine pertains.  *See Um Corp.*, , 2017 U.S. Dist. LEXIS 218369, at *3; *Shenwick*, 2021 U.S. Dist. LEXIS 66297, at *34-35.

At the hearing, Plaintiff, for the first time, identified the specific exhibits and made new arguments about whether there was foundation.  It is simply not appropriate to present a one-sentence motion in limine and then make new arguments at the hearing.  In any case, Defendants state they understand foundation is required, and that they will do so.  Accordingly, Plaintiff's sixth motion in limine is DENIED.

### G.    Plaintiff's MIL No. 7: Exclusion of Evidence Eliciting Sympathy for Plaintiff's Public Defenders

Plaintiff seeks to "exclude evidence and argument that seeks to promote sympathy for the non-party witnesses, with no relevance to the claims at issue, including but not limited to: [public defenders] spent their own money on Plaintiff."  (Pl.'s MIL at 9.)  Plaintiff again provides no legal authority or analysis, nor is it clear to what evidence this motion in limine pertains other than the single example cited by Plaintiff.  In any case, Defendants explain that such evidence helps rebut the claim that Plaintiff's public defenders disregarded his needs and requests, and is also evidence that Plaintiff received mail that he claims he did not receive.  (Defs.' Opp'n at 17.)  Accordingly, Plaintiff's seventh motion in limine is DENIED.

### H. Plaintiff's MIL No. 8: Exclusion of Public Defender Testimony of Facts They Do Not Remember

Plaintiff seeks to exclude testimony about facts that witnesses do not remember even after attempting to refresh their recollection with documents.  (Pl.'s MIL at 9-10.)  Plaintiff does not identify what testimony this is, so it is not apparent that this is an issue.  At best, Plaintiff's motion appears premature.  Accordingly, Plaintiff's eighth motion in limine is DENIED.  This does not preclude Plaintiff from objecting at trial as to lack of knowledge.

### I. Plaintiff's MIL No. 9: Exclusion of Evidence that Plaintiff was Not Found Incompetent to Stand Trial in Criminal Cases

Plaintiff seeks to exclude evidence that he was found competent to stand trial in his criminal cases.  (Pl.'s MIL at 10.)  Plaintiff provides no legal authority or analysis in support.  Further, as Defendants point out, to the extent Plaintiff argues that he was so developmentally delayed that he could not understand his attorney's recommendations or progress in treatment, competence to stand trial appears directly relevant to Plaintiff's cognitive abilities.  (Defs.' Opp'n at 19.)  Accordingly, Plaintiff's ninth motion in limine is DENIED.

### J. Defendants' MIL No. 1: Exclusion of Custom, Pattern, and Practice

Defendants seek to exclude any evidence going to custom, pattern, and practices.  (Defs.' MIL at 1.)  As an initial matter, Defendants' motion in limine suffers from the same defect as many of Plaintiff's -- namely, Defendants fail to identify the specific evidence at issue, thus requiring that the Court speculate as to what is included in this motion in limine's scope.  *See Um Corp.*, 2017 U.S. Dist. LEXIS 218369, at *3; *Shenwick*, 2021 U.S. Dist. LEXIS 66297, at *34-35.  In any case, the parties have already stipulated to not present evidence related to supervisory liability, and the Court previously found that *Monell* liability would be bifurcated.  (Joint Pretrial St. at 7.)  Thus, evidence related solely to whether the Alameda County Public Defender's Office had a custom and practice of encouraging delay would not be presented per the parties' agreement and the Court's prior ruling.  This is a separate matter from whether delay was a common strategy at a state-wide level or frequently used by individual public defenders.  Accordingly, Defendants' first motion in limine is DENIED.  This does not preclude Defendants from objecting to evidence that only goes to *Monell* liability.

United States District Court
Northern District of California

United States District Court
Northern District of California

### K.    Defendants' MIL No. 2: Exclusion of Other Civil Suits

Defendants seek to prohibit Plaintiff from making any reference to any other civil action involving Defendants.  (Defs.' MIL at 3.)  Again, Defendants fail to identify the specific evidence at issue.  Further, the parties have already agreed not to present documents, testimony, or argument regarding habeas corpus orders issued on *Vasquez* motions in other cases, including other clients of the Alameda County Defender's Office.  (Joint Pretrial St. at 6-7.)  Thus, it is unclear what other evidence is at issue.  Accordingly, Defendants' second motion in limine is DENIED.  This does not preclude Defendants from objecting to specific evidence about other lawsuits that are irrelevant to this case, such as evidence that Defendants were liable to other plaintiffs in other cases.

### L.    Defendants' MIL No. 3: Exclusion of Habeas Corpus Decisions in Other Cases

Defendants seek to prohibit Plaintiff from making any reference to any habeas corpus decision related to any other SVP.  (Defs.' MIL at 5.)  This appears limited to the use of habeas corpus decisions in other cases by Plaintiff's expert.  (Pl.'s Opp'n at 7, Dkt. No. 129.)  That said, it is not clear what evidence this would encompass, including what specific opinions by Plaintiff's expert this would affect.[3]

Thus, because this motion in limine requires the Court to speculate as to what precisely would be excluded, Defendants' third motion in limine is DENIED.

### M.    Defendants' MIL No. 4: Exclusion of Subsequent Remedial Measures

Defendants seek to exclude any evidence that goes to the addition of a supervisor in the SVP unit, or any other subsequent remedial measures taken by Defendants.  (Defs.' MIL at 8.)  Plaintiff does not oppose, and states he does not seek to introduce such evidence in order to show liability.  (Pl.'s Opp'n at 8.)  Accordingly, Defendants' fourth motion in limine is GRANTED.

---

[3] At the hearing, Defendants appeared to argue that the opinions at issue would be as to *Vasquez* and how the *Barker* factors apply.  It is unclear how expert opinions related to *Vasquez* are relevant in this case.  Further, as discussed below, the Court will not allow Mr. Kraft to opine as to the ultimate issue of whether there was a due process violation, which requires application of the *Barker* test.  Thus, it is not clear how these habeas corpus decisions would come in given the Court's rulings as to Mr. Kraft's expert testimony.

United States District Court
Northern District of California

**N.     Defendants' MIL No. 5: Exclusion of Rudy Kraft's Expert Testimony**

Defendants seek to exclude the testimony of Plaintiff's expert, Rudy Kraft, on the grounds that: (1) Mr. Kraft's opinions are improper conclusions of fact and/or impermissible legal conclusions, (2) Mr. Kraft is not qualified to offer an opinion on the professional standard of care, (3) Mr. Kraft's methodology is flawed and unreliable, and (4) Mr. Kraft's opinions regarding customs and practice are irrelevant at this stage.  Mr. Kraft is an appellate attorney, and most of his work has been on SVP appeals.  (Pl.'s Opp'n, Exh. 1 ("Kraft Report") ¶ 5.)  Mr. Kraft has represented SVPs in at least 178 completed appellate cases, and addressed due process claims in four cases.  (Kraft Report ¶ 7.)  Of those four cases, the appellate court affirmed the trial court's ruling that the due process rights of Mr. Kraft's clients were violated in one case, rejected the due process argument as insufficiently raised and preserved at the trial court level, and found the delays were insufficient to warrant relief in the fourth case.  (Kraft Report ¶ 7.)  Mr. Kraft considered the attorney notes, court records, correspondence between Plaintiff and his public defenders, discovery responses, Plaintiff's deposition, and a memorandum by Attorney Feld, as well as documents from other cases.

**i.     Improper Conclusions of Law and/or Legal Conclusions**

First, Defendants argue that Mr. Kraft cannot opine as to whether Plaintiff's public defenders were responsible for the delay in his case because this is a factual conclusion within the province of the trier of fact.  (Defs.' MIL at 11.)  Plaintiff responds that this opinion is in response to Defendants' arguments that Plaintiff's public defenders were filing motions to secure his release, which Mr. Kraft opines were unlikely to succeed.  (Pl.'s Opp'n at 13.)  In reviewing Mr. Kraft's opinion, Mr. Kraft explains why he believed the demurrer was problematic based on existing case authority.  (Kraft Report ¶ 61.)  Likewise, Mr. Kraft explains why the *Crane* due process motion to dismiss should not have been delayed given existing California law.  (Kraft Report Decl. ¶ 62.)  Finally, Mr. Kraft explains why he believed the *Ronje* motion was unduly delayed, including what other attorneys were doing at the time.  (*See* Kraft Report ¶ 64; Kohn Depo., Exh. 3 ("Kraft Depo.") at 170:8-172:11.)  These opinions appear to be adequately supported and go beyond a factual conclusion that the jury could determine on its own.  Thus, to

1    the extent Mr. Kraft bases his opinion about delay on the motions that were filed, such an opinion

2    would be admissible.

3          Defendants also argue that Mr. Kraft testified in his deposition that he would opine as to

4    whether Plaintiff's public defenders violated his due process rights.  (Defs.' MIL at 12-13.)

5    Plaintiff does not respond to this argument, and has himself argued that expert testimony on the

6    ultimate issue of law must be excluded.  (*See* Pl.'s MIL at 4.)  Accordingly, the Court will not

7    allow Mr. Kraft to testify as to whether Plaintiff's public defenders violated his due process rights.

8          **ii.**    **Professional Standard of Care**

9          Second, Defendants argue that Mr. Kraft is not qualified to offer opinions regarding the

10   professional standard of care in defending an SVP in a civil commitment proceeding.  (Defs.' MIL

11   at 14.)  Specifically, Mr. Kraft relies on California Rule of Professional Responsibility 3.2 and the

12   State Bar's Guidelines for Indigent Defense Services Delivery System ("Guidelines for Indigent

13   Defense").  (Pl.'s Opp'n at 12; Kraft Report ¶¶ 60, 65-66.)[4]

14         The Court finds that Plaintiff has not demonstrated that Mr. Kraft is qualified to opine on

15   the professional standard of care applicable in a SVP case.  As an initial matter, it is unclear how

16   Mr. Kraft's experience is sufficient to determine what is the professional standard of care.  Mr.

17   Kraft is an appellate attorney who has litigated four cases that involve due process issues, but who

18   has never conducted a SVP case at the trial level.  (*See* Kraft Depo. at 43:19-22.)  Mr. Kraft has

19   also acknowledged that he would not know how to prepare a SVP case for trial.  (Kraft Depo. at

20   42:9-10 ("I would not claim to know how to prepare for a trial myself."), 42:20-22 ("I've never

21   been on a jury or talked to jurors about an SVP trial to know what they consider."), 43:19-22 ("Q.

22   And you said you've never taken a SVP case to trial, correct? A. Yeah, for many reasons, but I'm

23   not a trial attorney."), 147:7-8 ("Q. Have you handled any probable cause hearings? A. No."),

24   176:2-5 ("I definitely do not know what it takes to prepare a trial such that I could offer an opinion

25   as to the exact right number of times to visit a client at Coalinga.").

26

27   _____

28   [4] Plaintiff also suggests that Mr. Kraft cites Rule of Professional Conduct 1.14, but this Rule is
     only in the Appendix of materials considered.  (Pl.'s Opp'n at 12; Kraft Report, Appendix A.)  Mr.
     Kraft never cites this Rule as a standard of care or otherwise being applicable in this case.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Further, with respect to the specific standards Mr. Kraft relies upon, Mr. Kraft fails to

2    adequately explain why these standards would apply, whether they are relied upon by attorneys, or

3    whether their use is accepted by his peers.  *See McDevitt*, 522 F. Supp. 2d at 1291.  Rather, he

4    testified at his deposition that while he focused on the Guidelines for Indigent Defense, he was

5    "not 100 percent sure that a court analyzing standard of care would consider those to be the right

6    guidelines.  They could impose a higher or lower standard."  (Kraft Depo. at 61:6-8; *see also* Kraft

7    Depo. at 62:20-23 ("I'm also offering the opinion that **if** the guidelines for indigent defense that I

8    cited there apply, they violated the standard of care under that guideline[.]") (emphasis added).)

9    Mr. Kraft also suggests in his deposition that Plaintiff's public defenders should have raised the

10   Americans with Disabilities Act ("ADA"); when asked if this failed to meet the applicable

11   standard of care or should be the standard of care, he opined that "it should be the standard of

12   care" and was "in part designed from common sense."  (Kraft Depo. at 68:17-21, 69:4-5.)  Further,

13   when questioned if this issue had been litigated, he responded that to his knowledge, he did not

14   know if anyone had finished litigating the issue.  (Kraft Depo. at 72:17-25 ("I am not certain that

15   no one has done it. I just do not know of it.").)

16        In response, Plaintiff points to certain portions of Mr. Kraft's report, but does not provide

17   any explanation for how these demonstrate that Mr. Kraft is qualified to opine on the standard of

18   care. (Pl.'s Opp'n at 13.)  Paragraphs 43-44 explain how SVP petitions generally work, including

19   the role of evaluators and what a district attorney must prove.  (Kraft Report ¶¶ 43-44.)  Paragraph

20   45 is an opinion by Mr. Kraft of the need for common sense.  (Kraft Report ¶ 45.)  Paragraphs 46-

21   47 describe what attorneys did at probable cause hearings and in investigations, with which Mr.

22   Kraft says he disagrees.  (Kraft Report ¶¶ 46-47.)  Paragraph 48 is an opinion by Mr. Kraft that the

23   public defenders should have arranged for a neurophysiological exam, but cites no rule, statute, or

24   case in support.  (Kraft Report ¶ 48.)  Paragraph 60 cites California Rule of Professional

25   Responsibility 3.2, but does not explain why this is a standard of care.  (Kraft Report ¶ 60.)

26   Paragraphs 65-67 likewise rely on the Guidelines for Indigent Defense, but again do not explain

27   why this sets the standard of care.  (Kraft Report ¶¶ 65-67.)  Paragraph 68 opines that attorneys

28   did not meet an unspecified standard of care by not getting valid waivers.  (Kraft Report ¶ 68.)

Paragraphs 72 concerns attorneys having communications with clients that could hurt their clients' chances of prevailing on a *Vasquez* motion, which is not something at issue in this case.  (Kraft Report ¶ 72.)  Paragraph 73 is an opinion on whether the *Barker* balancing test has been correctly applied in *Vasquez* proceedings, which is not related to the standard of care.  (Kraft Report ¶ 73.)  Finally, Paragraphs 5-20 simply describe various cases that Mr. Kraft worked on, but do not refer to the standard of care or explain Mr. Kraft's qualifications to opine on the standard of care.  (*E.g.*, Kraft Report ¶¶ 8 (describing Mr. Kraft's participation in *People v. Castillo*, a case concerning the government trying to back out of an agreement with the Los Angeles County Public Defender's Office), 9 (describing Mr. Kraft's participation in *People v. Landau*, which concerned the need for annual evaluations for everyone committed as an SVP), 12 (describing Mr. Kraft's participation in *People v. Curlee*, which found that SVPs cannot be compelled as witnesses at their commitment hearings), 17 (stating that Mr. Kraft's last publications were from 1978 to 1985 and concerned games, and that he had an inactive blog related to an English football club), 19 (stating Mr. Kraft's hourly compensation).)

In short, while Plaintiff can point to the specific rules and standards that Mr. Kraft relies upon, Plaintiff has not shown that Mr. Kraft is qualified to opine that these are, in fact, the standard of care, whether based on his experience, sources relied upon by attorneys, or the standard accepted by his peers.  Accordingly, the Court finds that Mr. Kraft cannot testify as to the standard of care.  Further, because Mr. Kraft cannot reliably identify the applicable standard of care, Mr. Kraft also cannot testify as to whether Plaintiff's public defenders sufficiently met the standard of care.

### iii.    Unreliability of Mr. Kraft's Opinions

Third, Defendants challenge Mr. Kraft's failure to consider key evidence in forming his opinions.  For example, Defendants point to Mr. Kraft's testimony that it was important to review hospital records when preparing for trial.  (Kraft Depo. at 43:2-9.)  While Mr. Kraft stated in his expert report that he believed Plaintiff's public defenders did not ensure that Coalinga properly accommodated Plaintiff's intellectual disabilities based on his review of the Coalinga hospital records, however, the records are not listed in his appendix of reviewed materials.  (Kraft Report ¶

51; Defs.' MIL at 17.)  At deposition, Mr. Kraft stated that he had not reviewed all of the hospital records, and that his opinion would not be based on the hospital records, which is contrary to his expert report.  (Kraft Depo. at 94:9-20.)  Moreover, Mr. Kraft was unable to offer more than -- in his own words -- "pure speculation" as to whether providing adequate treatment would have allowed Plaintiff to progress.  (Kraft Depo. at 132:17-23.)

Similarly, Mr. Kraft opines that there was a breakdown in the Alameda County Public Defender's Office, pointing to the workload.  (Kraft Report ¶ 77.)  Mr. Kraft's opinion is based solely on Attorney Feld's memo.  (Kraft Depo. at 113:20.)  Mr. Kraft, however, had no other evidence regarding the caseloads of Plaintiff's public defenders, but only assumed that Attorney Feld's memo was accurate as to that specific time frame.  (Kraft Depo. at 112:11-24, 114:3-12, 115:28-116:11.)  Nor is it clear how Mr. Kraft came to his finding that the workload was too much based on his own qualifications, rather than simply reading Attorney Feld's memo.

Mr. Kraft also opined that the failure of Plaintiff's public defenders to obtain a guardian ad litem suggested they did not understand their obligations to their client.  (Kraft Report ¶ 52.)  Yet when asked if it was even possible to have a guardian ad litem appointed in this situation, Mr. Kraft stated that he knew of no one at Coalinga who had been appointed a guardian ad litem and did not know if the issue had ever been litigated.  (Kraft Depo. at 160:5-15.)

Plaintiff does not respond as to this issue or address any of the opinions cited by Defendants as unreliable.  Accordingly, Mr. Kraft will not be permitted to testify as to whether Plaintiff's public defenders ensured Coalinga properly accommodated Plaintiff's intellectual disabilities, whether there was a breakdown in the Alameda County Public Defender's Office based on the workload, and whether Plaintiff's public defenders did not understand their obligations to their client based on their failure to obtain a guardian ad litem.

### iv.    *Monell* Liability

Finally, Defendants challenge Mr. Kraft's opinions on customs and practices because *Monell* liability has been bifurcated.  (Defs.' MIL at 18.)  Plaintiff states that he has no intention of presenting such evidence at this stage, so the issue is moot.  (Pl.'s Opp'n at 14.)

Accordingly, Defendants' fifth motion in limine is GRANTED IN PART and DENIED IN

United States District Court
Northern District of California

PART.  The Court will exclude Mr. Kraft's opinions as to: (1) the legal conclusion of whether Plaintiff's public defenders violated his due process rights, (2) the applicable standard of care and whether Plaintiff's public defenders met that standard, (3) whether Plaintiff's public defenders ensured Coalinga properly accommodated Plaintiff's intellectual disabilities, (4) whether there was a breakdown in the Alameda County Public Defender's Office based on workload, (5) whether Plaintiff's public defendants did not understand their obligations to their client based on their failure to obtain a guardian ad litem, and (6) opinions on customs and practices.

**O.      Defendants' MIL No. 6: Exclusion of Ineffective Assistance of Counsel Evidence**

Defendants seek to exclude all evidence relating to ineffective assistance of counsel on the ground that Plaintiff did not and cannot bring such a claim.  (Defs.' MIL at 18.)  Such evidence includes the public defenders' motions being boilerplate or unlikely to suceed, handling the probable cause hearing incorrectly, failing to hire an expert, filing unmeritorious motions, failing to challenge the inadequacy of Plaintiff's treatment, failure to conduct a proper investigation, failure to get written waivers, and failure to regularly communicate with Plaintiff.  (*Id.* at 19.)  It is not clear to the Court, however, that this evidence cannot go to the due process inquiry.  Simply because evidence may be relevant to an ineffective assistance of counsel claim does not automatically mean that such evidence cannot be relevant to Plaintiff's due process claim.

An "accused's interest in a speedy trial is specifically affirmed in the Constitution." *Barker*.  The California Supreme Court has recently confirmed that "persons facing SVP commitment have a due process right to a timely trial," and that such claims should be analyzed under *Barker*'s balancing test.  *Camacho*, 15 Cal. 5th at 368.  In determining whether a pre-trial delay violates an accused's right to due process under *Barker*, courts consider four factors: (1) the length of delay, (2) the reason for the delay, (3) the accused's assertion of his right, and (4) prejudice to the accused.  *See Barker*, 407 U.S. at 530.  The evidence at issue may go to these factors; for example, failure to regularly communicate with Plaintiff or obtain written waivers may go to the reason for the delay and whether Plaintiff asserted his rights.  Likewise, evidence that motions were unmeritorious or unlikely to proceed may go to Defendants' argument that the strategy used by Plaintiff's public defenders was reasonable.

United States District Court
Northern District of California

1   Accordingly, Defendants' sixth motion in limine is DENIED.

**P.    Defendants' Motion in Limine No. 7: Exclusion of Other SVP Cases**

Finally, Defendants seek to exclude evidence regarding other SVP cases.  (Defs.' MIL at 21.)  Plaintiff provides no opposition.  Accordingly, Defendants' seventh motion in limine is GRANTED.

## II.    EVIDENTIARY OBJECTIONS

The Court modifies its tentative rulings as to the following:

| Exhibit/Witness | RULING | Reason |
|---|---|---|
| **Def.'s Exhibits 2-6 (SVP Evaluations)** | **OVERRULED** | While the Court again overrules Plaintiff's objection, the Court orders the parties to meet and confer about how to limit or otherwise identify repetitive sections of the report to minimize the burden and cumulative nature of the reports. |
| **Def.'s Exhibits 9-19 (Public Defender Correspondence and Notes)** | **OVERRULED** | At the hearing, Defendants adequately established foundation and how the hearsay exceptions will apply.  Plaintiff agreed reliability concerns were addressed. |
| **Def.'s Exhibit 32 (Complaint)** | **OVERRULED** | Complaint can be used for demonstrative purposes or impeachment. |
| **Def.'s Exhibit 35 (DSH Response to PRA Request)** | **OVERRULED (qualified)** | Exhibit may come in if Attorney Slavin establishes that he considered the exhibit when formulating strategy in Plaintiff's case. |

## III.    VOIR DIRE

As previously instructed, the parties shall review the standard juror questionnaire and jointly propose ten case specific questions by **December 12, 2023**.  The parties shall also meet and confer as to which questions they believe most important to ask during voir dire.

## IV.    VERDICT FORM

As previously instructed, the parties shall meet and confer as to whether there is a way to simplify Defendants' proposed questions 5-12.  The parties shall provide a revised verdict form by **December 15, 2023**.

United States District Court
Northern District of California

### V.     JURY INSTRUCTIONS

The Court will issue a separate order regarding the parties' objections as to the jury instructions.

### VI.     PROCEDURAL MATTERS

The trial will be scheduled for 8:30 a.m. to 3:00 p.m., with one 30-minute lunch break and restroom breaks as needed.  The parties have agreed to having eight jurors, and the Court will allow three peremptory challenges each.  The Court will arrange for a Zoom conference to discuss jury questionnaire responses and jurors who should be dismissed for cause prior to jury selection. The parties are reminded that they are generally required to provide all necessary courtroom technology, such as projector screen(s) and a projector.

As stated at the pre-trial conference, the Court intends to impose time limits on the parties; currently, the Court estimates 49.5 hours of trial time, assuming one day for jury selection.  The Court typically splits the time evenly unless one party will take substantially less time.  Once evidence has concluded and prior to closing arguments, parties are directed to submit a thumb drive to Judge Westmore's courtroom deputy, with all admitted exhibits clearly identified and labeled.  Additionally, the parties shall e-file a joint exhibit list for submission to the jury.

### VII.     CONCLUSION

For the reasons stated above, the Court:

(1) DENIES Plaintiff's Motion in Limine No. 1;

(2) DEFERS ruling on Plaintiff's Motion in Limine No. 2;

(3) DENIES Plaintiff's Motion in Limine No. 3;

(4) DENIES Plaintiff's Motion in Limine No. 4;

(5) DENIES Plaintiff's Motion in Limine No. 5;

(6) DENIES Plaintiff's Motion in Limine No. 6;

(7) DENIES Plaintiff's Motion in Limine No. 7;

(8) DENIES Plaintiff's Motion in Limine No. 8;

(9) DENIES Plaintiff's Motion in Limine No. 9;

(10)     DENIES Defendants' Motion in Limine No. 1;

1      (11)     DENIES Defendants' Motion in Limine No. 2;

2      (12)     DENIES Defendants' Motion in Limine No. 3;

3      (13)     GRANTS Defendants' Motion in Limine No. 4;

4      (14)     GRANTS IN PART and DENIES IN PART Defendants' Motion in Limine No. 5;

5      (15)     DENIES Defendants' Motion in Limine No. 6;

6      (16)     GRANTS Defendants' Motion in Limine No. 7; and

7      (17)     SUSTAINS/OVERRULES the evidentiary objections as stated in the tentative

8            rulings and modified herein.

9      IT IS SO ORDERED.

10  Dated: December 5, 2023

KANDIS A. WESTMORE
United States Magistrate Judge