1

2

3

4                  UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7    FRANCIS MCARTHUR,                    Case No.  21-cv-09412-KAW

8                    Plaintiff,

9          v.                            **ORDER REGARDING JURY INSTRUCTIONS**

10   ALAMEDA COUNTY PUBLIC               Re: Dkt. Nos. 109, 117
     DEFENDER'S OFFICE, et al.,
11
                   Defendants.
12

13          **I.    PLAINTIFF'S ADDITIONAL PROPOSED JURY INSTRUCTIONS**

14       **A.    Instruction 1.5 (Claims and Defenses)[1]**

15          This instruction describes the claims and defenses of each party.  (Dkt. No. 117 at 1.)

16   Plaintiff proposes the following language, while Defendants object to the underlined language:

17                 To help you follow the evidence, I will give you a brief summary of
                   the positions of the parties:
18
                   The plaintiff asserts that Defendant Alameda County Office of the
19                 Public Defender violated his Fourteenth Amendment right to due
                   process by failing to bring his case to trial as required by state
20                 statute and the United States Constitution.  The plaintiff has the
                   burden of proving these claims.
21
                   The defendants deny those claims and also contend that plaintiff or
22                 other persons or entities caused or contributed to the failure to bring
                   his case to trial.  The defendant has the burden of proof on these
23                 affirmative defenses.

24                 The plaintiff denies that he agreed to knowingly and intentionally
                   waive his right to trial.
25

26

27   ─────────────────
     [1] While Defendants also propose Instruction 1.5, Defendants fail to provide any case-specific
28   information including the positions of the parties.  The Court therefore analyzes Plaintiff's
     Instruction 1.5 only.

*United States District Court*
*Northern District of California*

1    First, with respect to the "state statute" language, Defendants contend that Plaintiff has not

2    alleged a violation of any particular state statute, and that a § 1983 claim cannot be based on the

3    violation of a state statute.  (Dkt. No. 123 at 1.)  Plaintiff does not identify the specific state statute

4    at issue nor does Plaintiff explain how that unidentified state statute gives rise to a due process

5    violation.  Indeed, "[a] state statute or regulation creates a liberty interest entitled to protection

6    under the Fourteenth Amendment only when it imposes substantive limitations on official

7    discretion.  Establishing a procedural structure for making decisions does not itself create an

8    interest protected by the due process clause."  *Manago v. Rowland*, No. C-90-20304 MHP, 1990

9    U.S. Dist. LEXIS 13754, at *5 (N.D. Cal. Aug. 17, 1990).  It is not the Court's responsibility to

10   identify the statute or determine how it creates a due process interest.  Accordingly, the Court will

11   remove this language.

12   Second, as to the "affirmative defense" language, the Court previously explained that "it is

13   not apparent . . . that who caused the delay is an affirmative defense; rather, the party asserting the

14   due process violation has the burden of demonstrating a violation under *Barker* [*v. Wingo*, 407

15   U.S. 514 (1972).  *Camacho v. Superior Court*, 15 Cal. 5th 354, 380 (2023).]  This would include

16   establishing the second *Barker* factor."  (PTC Tentative Rulings at 12, Dkt. No. 136.)  Thus,

17   Plaintiff -- as the party asserting the due process violation -- has the burden of demonstrating the

18   violation under *Barker*.  The Court will, therefore, remove this language.

19   Finally, with respect to the "knowingly and intentionally" language, Defendants argue that

20   such language should be stricken because Plaintiff did not cite any authority in support.  While it

21   is again not the Court's responsibility to find legal authority for Plaintiff, courts have generally

22   found that waiver of constitutional rights, including due process, "'is ordinarily an intentional

23   relinquishment or abandonment of a known right or privilege,' and must be 'knowing and

24   voluntary' to be enforceable."  *United States v. Cano-Gomez*, No. CR 10-0052 MHP, 2010 U.S.

25   Dist. LEXIS 156936, at *12 (N.D. Cal. Apr. 20, 2010) (quoting *Johnson v. Zerbst*, 304 U.S. 458,

26   464 (1938); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993)); *see also United States*

27   *v. Hamilton*, 391 F.3d 1066, 1071 (9th Cir. 2004) ("Waiver is the intentional relinquishment or

28   abandonment of a known right."); *Coplin v. Conejo Valley Unified Sch. Dist.*, No. 95-56693, 1997

United States District Court
Northern District of California

2

1    U.S. App. LEXIS 13944, at *5 (9th Cir. June 11, 1997) ("[D]ue process rights can be waived if the

2    waiver is knowing and voluntary.  *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 175.").  Thus,

3    the Court will allow this language.

4              The Court modifies Plaintiff's Instruction 1.5 as follows:

5                      To help you follow the evidence, I will give you a brief summary of
                       the positions of the parties:

6

7                      The plaintiff asserts that Defendant Alameda County Office of the
                       Public Defender violated his Fourteenth Amendment right to due
8                      process by failing to bring his case to trial as required by the United
                       States Constitution.  The plaintiff has the burden of proving these
9                      claims.

10                     The defendants deny those claims and also contend that plaintiff or
                       other persons or entities caused or contributed to the failure to bring
11                     his case to trial.

12                     The plaintiff denies that he agreed to knowingly and intentionally
                       waive his right to trial.

13         **B.    Instruction 9.2 (General Principles)**

14             Both Plaintiff and Defendants propose an Instruction 9.2, which differ in two respects.

15   Defendants do not object to the first difference, which considers the duties and responsibilities of

16   each "individual" (as opposed to each "individual Defendant").  (Dkt. No. 123 at 3.)

17             Defendants, however, object to Plaintiff's addition of the final sentence, which states:

18   "During this trial, you will decide whether the acts of the plaintiff's deputy public defenders,

19   rather than the named defendants, caused a constitutional deprivation."  (Dkt. No. 123 at 3.)

20   Defendants contend that this unduly suggests that the public defenders caused a constitutional

21   deprivation, as opposed to Plaintiff himself.  (*Id.* at 3-4.)  The Court generally disagrees.  The final

22   sentence acknowledges that the actions of the named Defendants are not at issue at this stage

23   (given the bifurcation of *Monell* liability).  It does not unduly suggest that the public defenders

24   actually caused a constitutional deprivation, or that Plaintiff cannot be responsible for any delay.

25             The Court, however, will modify the final sentence to read as follows (modification

26   underlined): "During this trial, you will decide whether <u>or not</u> the acts of the plaintiff's deputy

27   public defenders, rather than the named defendants, caused a constitutional deprivation."

28

                                          3

**C.     Instruction 9.3 (§ 1983 Claim)**

Defendants do not object to this instruction.  The Court will therefore issue it as proposed by Plaintiff.

**D.     Instruction 9.31 (Particular Rights – Fourteenth Amendment)**

Defendants again object to the language that Plaintiff's waiver of his right to trial must have been knowing and voluntary.  (Dkt. No. 123 at 4.)  As discussed above, this language is supported by law.  The Court will issue the instruction as proposed by Plaintiff.

## II.     DEFENDANTS' ADDITIONAL PROPOSED INSTRUCTIONS

**A.     Instruction 2.9 (Impeachment Evidence – Witness)**

Plaintiff argues that this instruction is improper because it is an incomplete and incorrect statement of the law.  (Dkt. No. 126 at 4.)  Plaintiff, however, fails to explain how this is incomplete and incorrect, particularly when Defendants are proposing the same language as is in the Model Jury Instruction.  In the alternative, Plaintiff objects on the same basis as his MIL No. 8, but it is unclear how this is applicable given that MIL No. 8 concerns the exclusion of information that Plaintiff's public defenders do not remember even after they have attempted to refresh their recollection.  (*Id.*)

Plaintiff then proposes additional language, namely to suggest the addition of language that evidence that a witness "has a reason to lie in the present case due to demonstrated bias" can be considered.  (Dkt. No. 126 at 5.)  Such language is inappropriate and unnecessary when the Court already intends to issue Instruction 1.14, which addresses the credibility of witnesses including bias or prejudice.  The Court will issue the instruction as proposed by Defendants.

**B.     Instruction 1 (*Polk County v. Dodson*)**

Defendants propose a jury instruction based on *Polk County v. Dodson*, which explains: (1) an individual must be acting under color of state law in order to be liable to the injured party, and (2) individual public defenders are not acting under color of state law, which is why they are not liable under Section 1983.  (Dkt. No. 109 at 5.)  In short, the purpose of this instruction appears to be to explain why Plaintiff's public defenders are not named Defendants in this case.

The Court finds that while accurate, this instruction would likely confuse a jury.  A jury

1  may conflate not being liable under § 1983 with not being responsible for the constitutional

2  violation itself.  Such confusion appears to outweigh the limited benefit of the jury instruction.

3  Thus, the Court will not issue Instruction 1.

4      **C.  Instruction 2 (Due Process Violation)**

5      Defendants propose the following jury instruction based on *Barker*, which explains the

6  four-factor balancing test used to determine if there is a due process violation:

> Plaintiff brings this action for a violation of his due process rights
> under the Fourteenth Amendment of the Constitution. Plaintiff is not
> suing for ineffective assistance of counsel. The appropriate analysis
> for whether Plaintiff's due process rights were violated is set forth in
> *Barker v. Wingo.*
>
> In order to prevail on his § 1983 claim against the Defendants, the
> Plaintiff must prove, by a preponderance of the evidence, that the
> totality of the following elements tends towards a finding of a
> violation of Plaintiff's due process right to a timely trial:
>
> 1. the length of the pretrial delay;
>
> 2. the reason for the delay;
>
> 3. the defendant's assertion of his right to a trial; and
>
> 4. prejudice to the defendant caused by the delay.
>
> Plaintiff in this case carries the burden of demonstrating a speedy
> trial violation under Barker's multifactor test.
>
> None of the four *Barker* factors is dispositive and you must use a
> balancing test to analyze/weigh the conduct of the trial court, the
> prosecution, the public defender, and the plaintiff.
>
> The prosecution (DA) has a duty to ensure the case is moving
> forward in a manner that is consistent with due process.
>
> The court also has an affirmative constitutional obligation to bring
> the SVP to trial in a timely manner. Because trial courts ultimately
> control when trial will be held, they bear particular responsibility for
> preserving an alleged SVP's constitutional right to a timely trial.

24  (Dkt. No. 109 at 7.)

25      First, Plaintiff objects to the references to the trial court and prosecution, including the

26  duty of the prosecution and the court to move the case forward.  (Dkt. No. 126 at 7, 9.)  Plaintiff

27  argues that these are not elements or requirements of the first *Barker* factor, which concern the

28  length of the delay.  (Dkt. No. 126 at 7, 9.)  Instruction 2, however, is not limited to the first

United States District Court
Northern District of California

5

*Barker* factor, but provides a general overview of the *Barker* balancing test.

That said, the Court agrees that including this language in Instruction 2 places an improper emphasis on the role of the prosecutor and the court.  The duty of the prosecution and the court are specific to the second *Barker* factor, the reason for the delay.  *See Camacho*, 15 Cal. 5th at 384, 388.  Such information should therefore be included in Instruction 4, which explains the second *Barker* factor.  Thus, the Court will modify the last three paragraphs as follows: "None of the four *Barker* factors is dispositive and you must use a balancing test to determine whether trial has been unconstitutionally delayed."  *See id.* at 380; *Barker*, 407 U.S. at 533.

Second, Plaintiff argues (without legal authority) that Instruction 2 misstates the burden of proof because whether third parties contributed to the delay is an affirmative defense.  (Dkt. No. 126 at 7.)  As discussed above, the Court disagrees.  *See Camacho*, 15 Cal. 5th at 380, 383.

Third, Plaintiff contends that Instruction 2 is duplicative of Defendants' proposed Instructions 3-6, which discuss each *Barker* factor.  (Dkt. No. 126 at 7.)  The Court disagrees; Instruction 2 provides a general overview of the *Barker* balancing test, while Instructions 3-6 describe how each *Barker* factor works.

Finally, Plaintiff argues that Instruction 2 "ignores the unique factors of this case," including the parties' agreements and the bifurcation of *Monell* liability.  (Dkt. No. 126 at 8.)  For example, Plaintiff argues there is no dispute over the length of the delay, so it is confusing to identify length of delay as a *Barker* factor.  (*Id.*)  The jury is not being asked to decide individual *Barker* factors in a vacuum; they are being asked to determine whether there is a due process violation by **balancing** all four *Barker* factors, as required by binding Supreme Court authority.  Thus, even if there is no dispute as to how long Plaintiff was detained, the length of the delay is still a *Barker* factor that must be balanced against the other three factors.  As to the bifurcation of *Monell* liability, Plaintiff fails to explain how this affects the *Barker* balancing test;  Plaintiff must still demonstrate a due process violation under the *Barker* test whether or not *Monell* liability is at issue.  Moreover, to the extent Plaintiff suggests that the Supreme Court's acknowledgment that balancing the four *Barker* factors is "difficult" means the jury should not have to conduct the *Barker* balancing test, Plaintiff cites no legal authority in support.  (*See id.* at 9.)

1

**D.      Instruction 3 (*Barker v. Wingo* – First Factor)**

2

  Defendants propose the following instruction:

3

        Length of Delay:

4

        Unlike criminal trials, trials in Sexually Violent Predator cases are
        not subject to statutory time limits.

5

6

        Extended delays in Sexually Violent Predator cases, in some cases
        more than a decade, are not uncommon.

7

(Dkt. No. 109 at 7.)

8

        Plaintiff again objects that including this factor at all is prejudicial and confusing.  (Dkt.

9

No. 126 at 10.)  As discussed above, the Court disagrees; even if there is no dispute as to how long

10

Plaintiff was detained, a jury is still required to balance this factor with the other *Barker* factors.

11

        In the alternative, Plaintiff contends that Instruction 3 is insufficient because it does not

12

inform the jury of the length of delays that have been found to support a due process violation.

13

(Dkt. No. 126 at 11.)  Further, even if delays of more than a decade are "not uncommon," Plaintiff

14

points out that this does not mean that this factor would not support a due process violation.  (*Id.*)

15

Indeed, the California Supreme Court acknowledged that an eight-year delay "unquestionably

16

supports [a] claim of a constitutional timely trial violation," even if the California Supreme Court

17

ultimately found no due process violation.  15 Cal. 5th at 383.  Thus, as written, Instruction 3

18

appears inadequate.

19

        The parties are ordered to meet and confer on Instruction 3, and to jointly propose an

20

alternative.  Otherwise, the Court proposes the following language: "The first *Barker* factor is

21

length of the delay.  Whether the length of the delay supports a due process violation is dependent

22

upon the specific circumstances of the case."  *See Camacho*, 15 Cal. 5th at 383; *Barker*, 407 U.S.

23

at 530-31.

24

**E.      Instruction 4 (*Barker v. Wingo* – Second Factor)**

25

  Defendants propose the following instruction:

26

        The reasons for the delay:

27

        When weighing this factor you should consider whether the court,
        the state or Plaintiff is to blame for the delay.

28

7

1

2

Different weights should be assigned to different reasons. If the DA deliberately delays trial to hamper the defense, for instance, that effort at manipulation should be weighted heavily against the government.

3

4

5

A more neutral reason such as negligence or overcrowded courts should be weighted less heavily against the government but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the DA rather than with the defendant.

6

7

A valid reason, such as a missing witness, justifies an appropriate delay.

If the delay is attributable to the defendant, then waiver of his right to a speedy trial may be given effect under standard waiver doctrine.

8

9

10

11

Delays sought by the defendant's counsel weigh against the defendant's claim of a speedy trial violation. This rule flows from the ordinary principle that an attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, such that the client must assume the consequences of the attorney's delay.

12

(Dkt. No. 109 at 8.)

13

As an initial matter, as discussed above with Instruction 2, information about the duty of

14

the prosecution and the court should be included in Instruction 4, not Instruction 2.  The parties

15

should meet and confer on how to properly include this information.

16

First, Plaintiff objects on the ground that Defendants cannot now contend that the public

17

defenders did not delay Plaintiff's trial because they previously argued that the strategy of delay

18

was intentional and reasonable.  (Dkt. No. 126 at 12.)  It is unclear how an instruction explaining

19

the second *Barker* factor is contrary to Defendants' argument that their trial strategy was

20

reasonable.  This is not a reason to not provide this jury instruction.

21

Second, Plaintiff objects that Instruction 4 is incomplete.  (Dkt. No. 126 at 13.)  For

22

example, Plaintiff points to the jury instruction's reliance on the "standard waiver doctrine," but

23

observes that there is no information on what this standard waiver doctrine is.  (*Id.*)  Plaintiff also

24

complains that the instruction only provides one example of a valid reason justifying delay,

25

specifically a missing witness.  (*Id.*)  Defendants state that they are amenable to providing further

26

information as to the standard waiver doctrine, as well as the removal of the missing witness

27

example.  (Dkt. No. 132 at 7.)  Rather than put the burden on the Court to craft further language

28

for the parties, the Court orders the parties to meet and confer on this issue and jointly propose

United States District Court
Northern District of California

8

language.

Third, Plaintiff objects to the language reciting the principle that an attorney is a defendant's agent when acting in furtherance of the litigation. (Dkt. No. 126 at 14.) Plaintiff asserts this statement is confusing and duplicative, but does not explain why it is either. Indeed, this is a direct quote from *Camacho* in explaining how delays sought by a defendant's counsel affect the analysis of the second *Barker* factor. *See* 15 Cal. 5th at 385.

Finally, Plaintiff again objects that this should be an affirmative defense. (Dkt. No. 126 at 14.) For the same reasons discussed above, the Court disagrees.

The Court orders the parties to meet and confer consistent with the above discussion.

**F.     Instruction 5 (*Barker v. Wingo* – Third Factor)**

Defendants propose the following instruction:

> Sexually Violent Predator's assertion of the right to a timely trial:
>
> This factor does not hinge on the number of times the accused acquiesced or objected; rather, the focus is on the surrounding circumstances, such as the timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, and the accused's pretrial conduct (as that conduct bears on the speedy trial right). The totality of the accused's responses to the delay is indicative of whether he or she actually wanted a speedy trial.

(Dkt. No. 109 at 9.)

Plaintiff objects to the first sentence, namely the use of "Sexually Violent Predator" as prejudicial. (Dkt. No. 126 at 14.) The Court agrees that this language is unnecessary and possibly prejudicial (particularly given that Plaintiff has *not* been found to be a SVP by a jury), and would instead use the following language: "Plaintiff's assertion of the right to a timely trial."

To the extent Plaintiff again objects that Instruction 5 is duplicative of Instruction 2, the Court again disagrees as this instruction explains the third *Barker* factor.

**G.     Instruction 6 (*Barker v. Wingo* – Fourth Factor)**

Defendants propose the following instruction:

> Prejudice:
>
> This factor looks at the interests of defendants which the speedy trial right was designed to protect. The most serious interest is the

9

1

2
possibility that the defense will be impaired.

Prejudice is different in context of civil commitment trials than in
the criminal context. A presumption of prejudice does not apply in
the Sexually Violent Predator context, because trial on a petition for
commitment under the Sexually Violent Predator Act aims to
establish whether a person meets the definition of a Sexually Violent
Predator at the time of trial. In the SVP context, time ordinarily will
not erase critical evidence for the defense, since the jury relies on
recent expert evaluations to evaluate whether the individual qualifies
as an SVP at the time of trial. Mental status may fluctuate over time,
and the jury focuses on the most recent evidence to determine
whether the alleged SVP meets the commitment criteria at the time
of trial. Prejudice therefore is less likely to result purely as a
function of the passage of time.

You should not presume prejudice to the Plaintiff based on the
length of delay alone before his Sexually Violent Predator trial.

(Dkt. No. 109 at 10.)

First, Plaintiff objects to the following underlined language: "A presumption of prejudice

does not apply in the <u>Sexually Violent Predator</u> context." (Dkt. No. 126 at 15.)  Plaintiff argues

that this language is prejudicial because this factor is not limited to SVP cases. (*Id.*)  While it is

true that the fourth factor of prejudice applies in all due process analyses under *Barker*, the

language at issue **is** specific to SVP cases because the California Supreme Court has found that, in

contrast to criminal cases, "[t]here is little reason . . . to apply a presumption of trial prejudice in

the SVP context." 15 Cal. 5th at 392.  The California Supreme Court explained that SVP cases are

different because a petition of commitment must establish whether a person meets the SVP

definition at the time of trial. *Id.*  Defendants' proposed instruction directly quotes *Camacho*'s

explanation. *See id.*  While Plaintiff suggests that the Court should replace "SVP" with "civil

commitment," Plaintiff cites no authority that this same standard would apply in civil commitment

cases.  (*See* Dkt. No. 126 at 16.)

Second, Plaintiff argues that Defendants' proposed instruction is incomplete, pointing to

the sentence: "Prejudice is different in context of civil commitment trials than in the criminal

context."  (Dkt. No. 126 at 16.)  Plaintiff contends that this sentence assumes a jury knows

something about prejudice in the criminal context.  The Court agrees that this sentence is not

necessary; the remainder of the paragraph is clear as to how prejudice works in the SVP context.

The Court will therefore remove that sentence.  Plaintiff also argues that the instruction is

United States District Court
Northern District of California

confusing and that the Court should provide a description of the types of evidence that would show prejudice, such as the effect on a plaintiff's ability to prevail at trial, the fading of memories, or the loss of evidence. (*Id.*) In *Camacho*, however, the California Supreme Court used these precise examples to explain why a lengthy delay creates a presumption of prejudice in criminal cases, before concluding that such a presumption does *not* apply in the SVP context. 15 Cal. 5th at 392. Thus, it would not be accurate to include such examples in the instruction.

Third, Plaintiff argues that it is premature to consider prejudice because the parties have stipulated that damages are not at issue in this trial. (Dkt. No. 126 at 16.) Prejudice, however, is one of the *Barker* factors in determining whether there was a violation of Plaintiff's due process rights; it cannot simply be ignored. Further, whether Plaintiff suffered prejudice in his ability to bring the case to trial is a distinct matter from how much in *monetary damages* Plaintiff is entitled to for any violation of his due process rights.

Finally, Plaintiff contends that there is other prejudice that might be at issue. (Dkt. No. 126 at 17.) Indeed, the California Supreme Court acknowledged that prejudice in the SVP context also includes the interest in preventing oppressive pretrial incarceration and to minimize anxiety and concern of the accused. *Camacho*, 15 Cal. 5th at 391. Accordingly, the Court will therefore modify the second paragraph as follows: "This factor looks at the interests of defendants which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. The most serious interest is the possibility that the defense will be impaired." *See id.*

To the extent, however, that Plaintiff suggests there are other types of prejudice other than the above, Plaintiff has offered no legal authority. For example, at the pretrial conference, Plaintiff appeared to suggest that he suffered prejudice simply because he did not get a trial after asking for a trial. Again, no legal authority provided by Plaintiff supports this proposition; rather, this appears to be a tactic to avoid the issue of whether Plaintiff would have been found to be a SVP if he had gone to trial. Notably, in *Camacho*, the California Supreme Court observed that while being held in anticipation of an SVP trial "entails a severe and oppressive restriction on liberty that may give rise to feelings of anxiety and concern," pretrial SVP detention was

distinguishable from criminal imprisonment because "[p]retrial treatment of the underlying mental disorder that caused the state to seek commitment in the first place may ultimately facilitate the individual's release before trial." 15 Cal. 5th at 392-93. Thus, whether there was prejudice "requires a sensitive inquiry into the circumstances of the case. For individuals who have never received a favorable expert evaluation, delay in holding trial will generally entail less prejudice than for individuals who have a more substantial basis for arguing they do not satisfy the criteria for SVP commitment." *Id.* at 393. Thus, an assertion that the mere failure to get a trial is alone sufficient to demonstrate prejudice would appear contrary to the California Supreme Court's emphasis on the effect of any trial delay on a detainee's defense in determining prejudice. *See id.* at 393-94 (concluding that the fourth *Barker* factor did not support a due process violation because although the seven-year delay was significant, there was "no indication that the delay ha[d] undermined the fairness of the proceedings" or had an "appreciable impact on Camacho's ability to present his defense.").

### H.    Instruction 7 (Ineffective Assistance of Counsel)

Defendants propose the following instruction:

> Plaintiff is not asserting a claim for ineffective assistance of counsel under the Sixth Amendment. A claim for ineffective assistance of counsel is not a cognizable claim under 42 U.S.C. §1983.
>
> Plaintiff cannot sue for conduct undertaken when performing a lawyer's traditional functions, such as entering pleas, making motions, objecting at trial, cross-examining witnesses, and making closing arguments.
>
> However, to the extent that Plaintiff argues the strategy used by his attorneys in delaying trial was the wrong strategy, the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.

(Dkt. No. 109 at 11.)

Plaintiff objects to Instruction 7 as confusing, misleading, prejudicial, and irrelevant because there is no ineffective assistance of counsel claim. (Dkt. No. 126 at 18-19.) The Court agrees. As discussed in the Court's tentative ruling on Defendants' sixth motion in limine (which Defendants did not object to during the pretrial conference), simply because certain actions by Plaintiff's public defenders could support an ineffective assistance of counsel claim does not mean

12

United States District Court
Northern District of California

1    they are wholly irrelevant to the *Barker* analysis or whether Plaintiff suffered a due process

2    violation.  (*See* PTC Tentative Rulings at 4.)  Evidence such as the failure to regularly

3    communicate with Plaintiff or obtain written waivers may go to the reason for the delay and

4    whether Plaintiff asserted his rights, while evidence that motions were unmeritorious or unlikely

5    to proceed may go to Defendants' argument that the strategy used by Plaintiff's public defenders

6    was reasonable.  The Court will not give this instruction.

7         **I.    Instruction 8 (Independence of the Public Defender)**

8         Finally, Defendants propose the following instruction:

9              It is the constitutional obligation of the state to respect professional
             independence of the public defenders whom it engages. <u>The</u>
10            <u>constitution requires that a criminal defendant and Sexually Violent</u>
             <u>Predator receive effective and independent legal counsel.</u>
11

12            A public defender opposes the designated representatives of the
             State.
13   (Dkt. No. 109 at 12 (emphasis added).)

14        First, Plaintiff objects to the underlined language as prejudicial because Plaintiff was not a

15   criminal defendant in the context of this case, nor has he been found to be a SVP by a jury.  (Dkt.

16   No. 126 at 19.)  Defendants agree to modify the language to read: "The constitution requires that

17   indigent defendants and civil committees receive effective and independent legal counsel."  (Dkt.

18   No. 132 at 11.)  As this case does not concern Plaintiff's status as an indigent defendant, the Court

19   would modify the language further to read: "The constitution requires that civil committees

20   receive effective and independent legal counsel."

21        Second, Plaintiff objects to the second paragraph as not relevant.  (Dkt. No. 126 at 19-20.)

22   Defendants, however, explain that because *Camacho* distinguished between the role of the district

23   attorney and the public defender, the law regarding the independence of the public defender is

24   relevant to the *Barker* analysis.  The Court will therefore leave this sentence as is.

25                        **III.    CONCLUSION**

26        For the reasons discussed above, the Court will:

27        (1)    Issue a modified version of Plaintiff's Instruction 1.5;

28        (2)    Issue a modified version of Plaintiff's Instruction 9.2;

13

(3)   Issue Plaintiff's Instruction 9.3;

(4)   Issue Plaintiff's Instruction 9.31;

(5)   Issue Defendants' Instruction 2.9;

(6)   Not issue Defendants' Instruction 1;

(7)   Issue a modified version of Defendants' Instruction 2;

(8)   Require the parties to meet and confer as to modifying Defendants' Instruction 3;

(9)   Require the parties to meet and confer as to modifying Defendants' Instruction 4 (Barker v. Wingo – Second Factor);

(10)  Issue a modified version of Defendants' Instruction 5 (Barker v. Wingo – Third Factor);

(11)  Issue a modified version of Defendants' Instruction 6 (Barker v. Wingo – Fourth Factor);

(12)  Not issue Defendants' Instruction 7 (Ineffective Assistance of Counsel); and

(13)  Issue a modified version of Defendants' Instruction 8 (Independence of the Public Defender).

The parties are ORDERED to submit joint jury instructions by **December 18, 2023**. The parties shall also e-mail a copy of the above jury instructions with the ordered modifications in standard Word format (.doc or .docx, not .pdf format) to kawpo@cand.uscourts.gov by December 18, 2023.

IT IS SO ORDERED.

Dated: December 13, 2023

KANDIS A. WESTMORE
United States Magistrate Judge